IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VINCENT JIMENEZ,

    Plaintiff,

vs.                                                                    Civ. No.  09-1081 JP/ACT

OFFICER MARK A. ARAGON,
THE TOWN OF BERNALILLO,
THE TOWN OF BERNALILLO POLICE DEPARTMENT,
and JOHN DOES 1-5,

    Defendants.

MEMORANDUM OPINION AND ORDER

On September 16, 2010, Defendants filed Defendants' Motion for Partial Summary Judgment Pursuant to the New Mexico Tort Claims Act Notice Requirement (Doc. No. 55) (Motion for Partial Summary Judgment). Having reviewed the briefs, exhibits, and relevant law, the Court concludes that the Motion for Partial Summary Judgment should be denied.

*A. Background*

    *1. Plaintiff's Contentions*

This lawsuit arises from the November 11, 2006 arrest of Plaintiff by Defendant Bernalillo Police Officer Mark A. Aragon. Plaintiff alleges in his Amended Complaint for Damages for Personal Injuries and Civil Rights Violations (Doc. No. 19) (Amended Complaint) that at about 10:00 p.m. on November 11, 2006, he and a companion, Nathaniel Miles, drove to a 24-hour ATM machine located in the parking lot of the First Community Bank in the town of Bernalillo. Plaintiff alleges that after getting out of the car and checking the balance on his checking account, he and Mr. Miles saw a police car parked by the entrance of the bank parking lot. According to Plaintiff, once he and Mr. Miles were back in the car, Defendant Officer

Aragon sped up to the Plaintiff's car and engaged his emergency lights.  Plaintiff maintains that Defendant Officer Aragon asked him and Mr. Miles what they were doing at the bank.  Plaintiff alleges that Defendant Officer Aragon then asked him to step out of the car and to perform a series of field sobriety tests.  Plaintiff contends that a John Doe police officer subsequently arrived at the scene and assisted Plaintiff in the one leg field sobriety test.[1]  Plaintiff further contends that several more John Doe police officers later arrived at the scene and that Defendant Officer Aragon informed those officers that he was going to arrest Plaintiff.  Plaintiff claims that Defendant Officer Aragon then slammed Plaintiff's head on the hood of his police car perforating Plaintiff's left ear drum and damaging Plaintiff's left eye.  Mr. Miles testified at his deposition that he "heard" Plaintiff's head hitting the hood of a car and subsequently saw Plaintiff bent down with his head on the hood of a police car.  Next, Plaintiff alleges in the Amended Complaint that Defendant Officer Aragon placed him in the police car and booked him into the Sandoval County Detention Center (Detention Center) on a charge of driving while intoxicated (DWI).  Plaintiff asserts that although the municipal court convicted him of the DWI charge, the state district court acquitted him of the DWI charge.[2]

   2. *Defendant Officer Aragon's Contentions*

Defendant Officer Aragon contends in his Incident Narrative, *see* Ex. 1 (attached to Motion for Partial Summary Judgment), that he observed Plaintiff's car weaving between lanes and watched Plaintiff drive into the First Community Bank parking lot.  Defendant Officer Aragon indicated that he had turned on his video system when he first observed Plaintiff's car

---

[1] Plaintiff complained that his back hurt when attempting the one leg field sobriety test.

[2] The state district court, however, found Plaintiff guilty of failing to maintain a traffic lane.

2

weaving.  Defendant Officer Aragon then followed Plaintiff into the parking lot and spoke with him.  Defendant Officer Aragon noted in the Incident Narrative that he "smelled a strong odor of an alcoholic beverage emitting from [Plaintiff's] breath."  *Id*.  Defendant Officer Aragon further stated that Plaintiff was unable to perform any of the field sobriety tests and almost fell down in his attempts to perform those tests.  Defendant Officer Aragon testified in his deposition that he did not slam Plaintiff's head on the hood of his police car.  Defendant Officer Aragon also stated in the Incident Narrative that he transported Plaintiff to the Detention Center for a breath test but Plaintiff ultimately refused to take the test.  Finally, Defendant Officer Aragon indicated that Plaintiff was booked into the Detention Center "without incident or injury."  *Id*.

### *3. The Amended Complaint*

Plaintiff alleges in Count I of the Amended Complaint that Defendants are liable for damages under 42 U.S.C. §1983 because they violated his Fourth Amendment rights to be free from the use of excessive force and to be free from an illegal search and seizure.  Plaintiff further alleges in Count I that the Fourth Amendment violations also violated the New Mexico Constitution.  Plaintiff alleges in Count II that the Defendants committed the following state torts: battery, false imprisonment, malicious prosecution, fraud, the tort of outrage, civil racketeering, and unfair trade practices.  In addition, the Plaintiff contends in Count II that Defendants Town of Bernalillo (Town) and Town of Bernalillo Police Department (BPD) are liable for damages arising from those torts under the theory of *respondeat superior*.

Plaintiff does not indicate in the Amended Complaint whether he provided the Town with any notice of his tort claims as required by the New Mexico Tort Claims Act (NMTCA), NMSA 1978, §41-4-16 (1977).  Section 41-4-16 states, in pertinent part,

> A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.
>
> B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

The Town claims that it is entitled to summary judgment on the Count II tort claims because it did not receive the requisite tort claims notice under either §41-4-16 (A) or (B). Plaintiff asserts that the Court should liberally construe his actions in deciding the notice issue because he was *pro se* prior to the filing of this lawsuit in October 2009. Plaintiff further asserts that 1) he was incapacitated and, therefore, could not provide timely written notice of his torts; 2) he did provide timely written notice of his tort claims; and 3) that the Town had actual notice of his tort claims.

   *4. Evidence Pertaining to Notice of the Tort Claims*

      *a. Plaintiff's Legal Experience*

Plaintiff became a certified paralegal in 1989. He worked for a law firm as a paralegal for a year and a half in the early 1990's. Plaintiff later worked at the public defender's office as a legal assistant and investigator for about seven years. Plaintiff testified at his deposition that: "I've been around the legal field for so long, I figured it was not a big deal who I hired [as my attorney] as long as [defendants] got their notice in the time that I planned on suing them."

Depo. of Vincent Jimenez, Ex. 1 at 138-39 (attached to Defendants' Reply to Plaintiff's Response to Defendants [sic] Motion for Partial Summary Judgment Pursuant to the New Mexico Tort Claims Act Notice Requirement (Doc. No. 78) (Reply), filed Oct. 19, 2010).

*b. Evidence Regarding Service of a Written Tort Claims Notice*

George Perez, legal counsel for the Town, stated in a sworn affidavit that on March 20, 2007, a written tort claims notice from Plaintiff, dated February 4, 2007, was hand-delivered to his office. Mr. Perez wrote the date that the tort claims notice was received in the upper right hand corner of the tort claims notice. On March 21, 2007, Mr. Perez forwarded the tort claims notice to the Town Clerk and requested her to forward the tort claims notice to risk management in Santa Fe, New Mexico.

Fred Radosevich, the Chief of Police of the BPD, stated in a sworn affidavit that on March 21, 2007 he received from Plaintiff a written tort claims notice dated February 4, 2007. Chief Radosevich wrote the date and time of receipt of the tort claims notice on the upper right hand corner of the tort claims notice. Chief Radosevich stated that neither Plaintiff nor anyone else had approached him about the November 11, 2006 arrest prior to March 21, 2007. Chief Radosevich further stated that the video tape of Plaintiff's arrest was recycled 90 days after Plaintiff's arrest as provided by BPD procedure.

Sally Padilla, the Sandoval County Clerk, stated in a sworn affidavit that she did not receive Plaintiff's written tort claims notice until October 21, 2009 when she was served the complaint and summons in this case.

Plaintiff testified at an October 1, 2010 deposition that on February 4, 2007 he hand-delivered written tort claims notices to the Town's risk management, to the Town mayor, to the Town's secretary, to the Town attorney, to the BPD chief of police, and to the Sandoval County

attorney. Depo. of Vincent Jimenez, Ex. 1 at 129-32 (attached to Reply). According to Plaintiff, he accomplished this service by leaving his tort claims notices with the BPD dispatcher and with a secretary at the Sandoval County Courthouse who indicated she was authorized to receive the notices. Plaintiff testified that he "had everybody who [he] gave notice, tort claim notice, sign that they received the notice so that in case [he] needed it, [he] would have it." *Id*. at 130. However, Plaintiff claims that in August 2009 the paper with the signatures showing receipt of the written tort claims notices was stolen along with his belongings.

*c. Evidence Regarding Plaintiff's Alleged Incapacity to Serve a Written Tort Claims Notice*

The booking officer present when Defendant Officer Aragon brought Plaintiff to the Detention Center on November 11, 2006 did not observe any signs of trauma or open cuts, bruises, scabs, or sores on Plaintiff. *See* Inmate Medical Screening Form, Ex. 7 (attached to Reply). Plaintiff, however, told the booking officer that he had consumed three beers. In fact, the booking officer noted that Plaintiff appeared to be under the influence of alcohol. A medical officer had also checked the Plaintiff.

Plaintiff testified at a January 18, 2008 hearing, contrary to the booking officer's observations, that after Defendant Officer Aragon slammed his head on the hood of the police car, his left ear began bleeding onto his shirt collar and it continued to bleed when he was booked into the Detention Center. Plaintiff claimed he told a nurse during the booking process that he had a perforated eardrum. Plaintiff explained at the hearing that he did not see a doctor at that time because the Detention Center staff thought he would bond out of the Detention Center. Plaintiff also testified that he took a shower at the Detention Center and showed an officer a towel that had been bloodied from his ear. Plaintiff testified that a nurse was then called and

checked his alcohol level.

On November 23, 2006, Plaintiff saw a Detention Center nurse because he felt left ear pain and pressure. The nurse noted that the left ear had a "slight inflammation." Ex. 9 (attached to Reply). On December 11, 2006, Plaintiff saw a Detention Center doctor regarding left ear pain. The doctor's examination was negative. Plaintiff also saw a Detention Center nurse on December 22, 2006 for cold symptoms.

Plaintiff did not see an ear doctor until August 20, 2007 although Plaintiff claims that after the November 11, 2006 arrest he got more ear infections, was dizzy, suffered from earaches, and could hear a popping sound in his ear. The August 20, 2007 ear examination showed that Plaintiff had "some mild tympanic membrane scarring ... on the left side" and that "the left ear exhibited mild to borderline moderate sensori neural hearing loss." In addition, "[i]t was explained to Mr. Jimenez that his test results could not confirm or disprove head trauma as the cause of his asymmetric hearing loss." Ex. 4 (attached to Reply).

On August 27, 2007, Plaintiff saw an optometrist because he was having problems with peripheral vision. The optometrist prescribed reading glasses to improve his vision in the left eye. Plaintiff's vision in the right eye, however, could not be improved with "corrective lenses, surgery, or orthoptic therapy" due to a medical condition present in that eye since birth. Ex. 10 at 2 (attached to Reply).

Despite these medical issues, Plaintiff admits that he was able to perform his usual work after the November 11, 2006 arrest although he did not work immediately after the arrest because he was incarcerated at the Detention Center and then under house arrest for violating the terms of his state probation. Plaintiff's probation officer indicated that Plaintiff began reporting on January 26, 2007 that he was working and that Plaintiff was "doing well otherwise." Ex. 5

(attached to Reply).  These same kinds of reports and observations continued until May 1, 2008 with the exception of Plaintiff's report that he had hurt his back when he fell off a scaffold on a construction job in January 2008.

Plaintiff claims that in August 2009 a Albuquerque Police Officer severely beat him on the head without justifiable cause.  Plaintiff apparently suffered a brain hematoma, cracked nose, and loosened teeth.  Plaintiff, nonetheless, was able to send a written tort claims notice to the City of Albuquerque about 15 days after the beating without assistance from anyone.  Medical records after the August 2009 incident show that Plaintiff suffered from insomnia, experienced headaches, drank heavily, and had various psychological issues.  In fact, in December 2009, Plaintiff applied for Social Security disability benefits based on a hematoma to the brain, severe headaches, blurred vision, bleeding through the nose and eyes, being legally blind in the right eye, short-term memory loss, ringing in the ears, insomnia, depression, anxiety, and bi-polar disorder.  The complaint of blurred vision apparently related to his right eye.  *See* New Mexico Disability Determination Services Vision Screening Report, dated April 20, 2010, Ex. 2 (attached to Reply). The alleged onset date of disability was August 12, 2009 and the last date of work was likewise August 12, 2009.  The Social Security Administration subsequently denied the application concluding that Plaintiff can perform semi-skilled work.

B.  *Summary Judgment Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the

initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of the non-movant's pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*C.  Discussion*

Defendants argue that the Town is entitled to summary judgment on the Count II tort claims because Plaintiff failed to give the Town timely written notice under the NMTCA and the actual notice exception to the written notice requirement does not apply in this case.  Plaintiff argues, on the other hand, that 1) his untimely service of the written tort claims notices in March 2007 should be viewed liberally due to his *pro se* status at that time; 2) Plaintiff should have been allowed an additional 90 days to serve his written tort claims notice because of incapacitation suffered as a result of the November 11, 2006 arrest and ensuing injuries; 3) Plaintiff timely served the written tort claims notices on February 4, 2007; and 4) the Town had actual notice of imminent litigation on the tort claims.

*1.  Significance of Plaintiff's Pro Se Status*

Plaintiff argues first that the Court should liberally view the March 2007 service of the written tort claims notices because Plaintiff was *pro se* and because risk management ultimately received the tort claims notice.  To support this proposition, the Plaintiff cites to one of my cases, *West v. City of Albuquerque, et al.,* Civ. No. 00-1267 JP/WWD, in which I considered an

untimely *pro se* response to a motion and to another case in this district, *Bragg v. Chavez*, et al., Civ. No. 07-0343 JB/WDS, in which the Honorable United States District Court Judge James Browning held that a *pro se* plaintiff's claims should be liberally construed.  Although the Court can be flexible in accepting late *pro se* responses to motions and must liberally construe *pro se* litigants' claims, the Court is not in a position to ignore a statutory deadline merely because a litigant is *pro se*.  *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (*pro se* litigants must comply with the same procedural rules as other litigants).  In fact, the New Mexico courts have clearly held that the NMTCA "notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit." *Godwin v. Memorial Medical Center*, 2001-NMCA-033 ¶32, 130 N.M. 434.  *See also Lopez v. State*, 1996-NMSC-071 ¶16, 122 N.M. 611 ("actual notice [under the NMTCA] is a jurisdictional question"); *Methola v. County of Eddy*, 95 N.M. 329, 334, 622 P.2d 234, 239 (1980) ("The right to sue and any recovery under the New Mexico Tort Claims Act is limited to the rights, procedures, limitations and conditions prescribed in that Act."); *Espanola Housing Authority v. Atencio*, 90 N.M. 787, 789, 568 P.2d 1233, 1235 (1977) ("such notice provisions operate as statutes of limitations since they are deemed to be conditions precedent to filing suit"). Moreover, Plaintiff's employment as a certified paralegal and legal assistant undermines the more general principle that the Court should treat a *pro se* litigant more leniently because a *pro se* litigant is untrained in legal matters.  The Court will, therefore, not give special consideration to Plaintiff due to his former *pro se* status.

    *2. Timeliness of the Written Tort Claims Notice*

    The Town argues that the affidavits and documents submitted by George Perez, Fred Radosevich, and Sally Padilla demonstrate that the Plaintiff untimely served written notices of

his tort claims on the Town in March 2007 and later in October 2009. *See* §41-4-16 (A) (written notice of tort claim is due 90 days after the occurrence of the tort). Plaintiff argues, however, in Plaintiff's Response to Defendants' Motion for Partial Summary Judgment Pursuant to the New Mexico Tort Claims Act Notice Requirement (Doc. No. 67) (Response) that service of the written tort claims notices in March 2007 should be considered timely because he was incapacitated after Defendant Officer Aragon slammed his head on the hood of the police car on November 11, 2006. *See* 41-4-16 (B) ("The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury."). Nonetheless, subsequent to the filing of the Response and contrary to his counsel's argument in the Response regarding incapacitation, Plaintiff testified at his deposition that he actually timely served written tort claims notices on February 4, 2007, within the 90 day period that began November 11, 2006.

### a. *Plaintiff's Incapacitation Argument*

Having reviewed, in the light most favorable to Plaintiff, the medical evidence, the probation officer's records regarding Plaintiff's ability to work and well-being, and most significantly Plaintiff's own testimony demonstrating his ability to timely serve written tort claims notices on February 4, 2007, the Court concludes that a reasonable jury could not find that Plaintiff's alleged injuries from the November 11, 2006 arrest incapacitated him from serving on the Town a written tort claims notice within 90 days of the November 11, 2006 arrest. Hence, Plaintiff's incapacitation argument fails as a matter of law.

### b. *The Date Plaintiff Served the Written Tort Claims Notices*

Although the Town provided evidence that Plaintiff did not serve any written tort claims notice until March 2007, Plaintiff's testimony that he timely served written tort claims notices on

February 4, 2007 raises a genuine issue of material fact regarding when he actually served the written tort claims notices. "Summary judgment is not appropriate where there is the slightest doubt as to the existence of an issue of material fact." *Callaway v. New Mexico Dept. of Corrections*, 117 N.M. 637, 640, 875 P.2d 393, 396 (Ct. App. 1994). Consequently, the Town is not entitled to summary judgment on its claim that Plaintiff untimely served written notices of his tort claims.

### 3. Actual Notice of the Tort Claims

The Town also argues that the undisputed facts do not show that it had actual notice that there was a "'likelihood that litigation may ensue.'" *Lopez v. State*, 1996 NMSC-071 ¶12, 122 N.M. 611. Plaintiff asserts that Defendants' failure to preserve the video tape of the November 11, 2006 arrest, and Defendant Officer Aragon's failure to document his use of force and report that use of force to a supervisor are not valid excuses for the Town to now claim it was ignorant of any imminent litigation.

In examining the issue of whether a governmental entity has actual notice of a tort claim, "New Mexico courts consistently have applied the 'likelihood that litigation may ensue' standard, looking at whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation." *Id*. In viewing the evidence in the light most favorable to Plaintiff, it is clear that before the Plaintiff allegedly served the written tort claims notices on February 4, 2007, the Town would have been aware of the following evidence: Defendant Officer Aragon's Incident Narrative, the Inmate Medical Screening Form completed during booking at the Detention Center, the fact that Detention Center personnel saw Plaintiff's left ear bleeding when he arrived at the Detention Center, Plaintiff's statement to a Detention Center

nurse during the booking process that his ear drum was perforated, two Detention Center medical reports related to his left ear, and the video tape of the arrest.  Admittedly, the Incident Narrative, the Inmate Medical Screening Form, and the December 11, 2006 medical report do not indicate that Defendant Officer Aragon injured Plaintiff.  However, Plaintiff's assertion that his left ear was bleeding when he arrived at the Detention Center, Plaintiff's statement to a Detention Center nurse during the booking process about his injured ear, and the subsequent Detention Center medical record dated twelve days after the arrest substantiating a left ear injury by noting "slight" left ear inflammation raise a genuine issue of material fact regarding whether Defendant Officer Aragon used some level of force on Plaintiff.  Moreover, Plaintiff's testimony that the video tape would have shown use of excessive force likewise raises a genuine issue of material fact as to what information the Town had with respect to Plaintiff's excessive force claim.  In sum, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether under the totality of the circumstances before the Town, a reasonable person would have concluded that Plaintiff may claim compensation.  The Town is, therefore, not entitled to summary judgment on its position that it did not have actual notice of the Plaintiff's tort claims.

*D. Conclusion*

Plaintiff's former *pro se* status does not exempt him from the notice requirements provided in §41-4-16.  However, although Plaintiff did not come forward with evidence to support his initial argument that the 90 day period for serving a written tort claims notice should have been extended due to his incapacitation, Plaintiff did come forward with evidence showing that there is a genuine question of material fact as to whether a written tort claims notice was timely served within 90 days of the November 11, 2006 arrest.  In addition, Plaintiff came

forward with evidence showing that there is a genuine issue of material fact as to whether the Town had actual notice of Plaintiff's tort claims.  Considering these genuine questions of material fact, the Court must deny the Motion for Partial Summary Judgment.

IT IS ORDERED that Defendants' Motion for Partial Summary Judgment Pursuant to the New Mexico Tort Claims Act Notice Requirement (Doc. No. 55) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE