UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

VINCENT JIMENEZ,

    Plaintiff,

vs.                                                    09-CV-1081 JAP/ACT

OFFICER MARK A. ARAGON,
THE TOWN OF BERNALILLO,
THE TOWN OF BERNALILLO POLICE
DEPARTMENT, and JOHN DOES 1-5,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 96)**

On December 16, 2009, Plaintiff voluntarily dismissed this lawsuit with prejudice. Plaintiff now seeks to reinstate the case under Fed. R. Civ. P. 60(b) claiming that he has newly discovered evidence. However, because the evidence actually is not newly discovered and because Plaintiff has failed to otherwise satisfy the requirements of Rule 60(b), the Court will deny *pro se* PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 96).[1]

I.  Background

On November 13, 2009, Plaintiff filed his original complaint in the Thirteenth Judicial District Court, Sandoval County, New Mexico alleging civil rights violations related to his arrest

---

[1] PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 96) (MOTION) was filed on June 13, 2011. On June 27, 2011, Defendants Officer Mark A. Aragon, The Town of Bernalillo, New Mexico, and The Town of Bernalillo Police Department (Defendants) filed DEFENDANT'S (sic) RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 97) (RESPONSE). On July 19, 2011, Plaintiff filed PLAINTIFF'S REPLY TO THE DEFENDANT'S (sic) RESPONSE OF (sic) PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 98) (REPLY).

in 2006. Defendants timely removed the case to this Court. With leave of court, Plaintiff filed an amended complaint (Doc. No. 25-1) asserting under 42 U.S.C. § 1983 that he had been detained and arrested in violation of the Fourth Amendment of the United States Constitution and that Defendant Aragon, an officer with the Bernalillo Police Department (BPD), used excessive force during the arrest. Plaintiff also asserted claims under the New Mexico Tort Claims Act for battery, false arrest and false imprisonment.

In his amended complaint, Plaintiff alleged that on November 11, 2006 at about 10:00 p.m., Plaintiff and his companion Nathaniel Miles were sitting in Plaintiff's vehicle in a parking lot behind the First Community Bank (Bank) in Bernalillo, New Mexico. Plaintiff was planning to check his bank account balance at the Bank's ATM machine. However, before he was able to exit his vehicle, Officer Aragon drove up quickly with his police vehicle's emergency lights flashing. Plaintiff alleged that Officer Aragon, without reasonable suspicion, asked Plaintiff to exit his vehicle, and Officer Aragon then subjected Plaintiff to a field sobriety test. Plaintiff testified in his criminal trial that he willingly submitted to the field sobriety test. Plaintiff alleged that Officer Aragon unlawfully arrested him for driving under the influence and used excessive force when Officer Aragon slammed Plaintiff's head onto the hood of the police vehicle causing Plaintiff to suffer a perforated eardrum.

In DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 92), Officer Aragon asserted that on November 11, 2006 at 8:53 p.m., he pulled Plaintiff's vehicle over after observing Plaintiff's vehicle weaving several times in and out of its lane. Officer Aragon smelled a strong odor of alcohol emanating from Plaintiff's vehicle, and Officer Aragon asked Plaintiff to step out of his vehicle and submit to field sobriety tests. According to Officer Aragon, Plaintiff was unable to perform the field sobriety tests because Plaintiff had difficulty

maintaining his balance while standing. In addition, Officer Aragon noticed that Plaintiff smelled of alcohol and exhibited signs of intoxication such as slurred speech and blood-shot, watery eyes. After Plaintiff's arrest, he was booked into the Sandoval County Detention Center (SCDC). On November 14, 2006, Plaintiff was re-arrested for violating the terms of probation from another conviction and was booked into the Metropolitan Detention Center (MDC). Plaintiff served 78 days for the probation violation. In Bernalillo Magistrate Court, Plaintiff was convicted of Driving While Intoxicated (DWI) and for failing to maintain a driving lane, but he appealed those convictions. The state district court overturned the DWI conviction, but upheld the conviction for failing to maintain a driving lane.

At the conclusion of discovery in this case, Defendants filed DEFENDANTS' MOTION TO DISMISS THIS CASE FOR DISCOVERY ABUSES on December 3, 2010 (Doc. No. 88).[2] Defendants also filed DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on December 6, 2010 (Doc. No. 92).

On December 9, 2010, United States Magistrate Judge Alan C. Torgerson held a settlement conference. According to Plaintiff, when he asked his attorney for advice, Plaintiff's attorney told him to listen to Magistrate Judge Torgerson. At the settlement conference, Magistrate Judge Torgerson informed Plaintiff that since Plaintiff's conviction for failure to maintain a lane was upheld, Officer Aragon was justified in stopping Plaintiff. In other words, Plaintiff would not be able to show that the stop was unconstitutional. In addition, Magistrate

---

[2] In DEFENDANTS' MOTION TO DISMISS THIS CASE FOR DISCOVERY ABUSES , Defendants asserted that Plaintiff failed to disclose a list of his medical/mental health providers in a timely manner, failed to disclose various medical conditions pre and post-dating the arrest, failed to disclose his attempt to obtain social security benefits, failed to disclose all injuries prior to his deposition, and perjured himself in his account of the incident and his asserted injuries.

Judge Torgerson allegedly stated that he was inclined to dismiss the case, and if the case was dismissed by the Court, Plaintiff could be liable for the attorney's fees incurred by Defendants. Plaintiff asserts that upon learning this information, he agreed to voluntarily dismiss his amended complaint with prejudice.

On December 16, 2010, a Stipulated Order of Dismissal was entered dismissing all of Plaintiff's claims with prejudice. *See* RULE 41 STIPULATION OF DISMISSAL WITH PREJUDICE (Doc. No. 95). Plaintiff, now proceeding *pro se*, seeks to set aside the Stipulated Order of Dismissal.

II. Standard of Review

The rules of civil procedure allow a party to object to an order or decision through either a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment under Fed. R. Civ. P. 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991). If a party files a motion for reconsideration of a decision within twenty-eight days of the decision, the Court will treat it as a motion to alter or amend a judgment under Rule 59(e). *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). If, however, a party files a motion for reconsideration more than twenty-eight days after the decision, the Court will treat it as a motion under Rule 60(b) for relief from a judgment or order. *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006). Whether to grant Rule 60(b) relief lies within the "substantial discretion" of the district court. *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir.1990).

Under Rule 41(a)(1)(A)(ii), a claimant may dismiss an action voluntarily by filing a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1)(A)(ii). "A voluntary dismissal with prejudice operates as a final adjudication on the merits. " *Schmier v.*

*McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) (citations omitted) (stating that a voluntary dismissal with prejudice is a final judgment). A voluntary dismissal with prejudice, however, may be set aside under Rule 60(b) if warranted. *Id.* 469 F.3d at 1242. "Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." *Beugler v. Burlington N. & Santa Fe Ry. Co.,* 490 F.3d 1224, 1229 (10th Cir. 2007) (internal quotation marks omitted). The party who seeks relief under Rule 60(b) "has a high hurdle to overcome[,]" and is not allowed "merely to reargue issues previously addressed to the court." *Allender*, 439 F.3d at 1242.

>Rule 60(b) provides:
>
>[T]he court may relieve a party . . . from a final judgment . . . for the following reasons:
>
>(1) mistake, inadvertence, surprise, or excusable neglect;
>(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>(4) the judgment is void;
>(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

>III. Discussion

Plaintiff contends that he has newly discovered evidence that under Rule 60(b)(2) warrants setting aside the RULE 41 STIPULATION OF DISMISSAL WITH PREJUDICE (Doc. No. 95) and reopening the case. Plaintiff also maintains that the Court should set aside the RULE 41 STIPULATION OF DISMISSAL WITH PREJUDICE (Doc. No. 95) because he was coerced into dismissing the case at the December 9, 2010 settlement conference. The Court will consider this contention under Rule 60(b)(6). Defendants assert that the evidence described in

the MOTION is not newly discovered evidence because all of the evidence was available and asserted by Plaintiff prior to his voluntary dismissal. Defendants also contend that Plaintiff was ably represented by counsel at the settlement conference and that Plaintiff has presented no evidence that he was wrongfully coerced into dismissing the case.

      A. New Evidence

Under Rule 60(b)(2), a party may be relieved from a final judgment or order based on newly discovered evidence if five requirements are met:

> 1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) . . . the newly discovered evidence would probably produce a different result.

*Zurich N. America v. Matrix Service, Inc.*, 426 F.3d 1281, 1291 (quoting *Graham v. Wyeth Lab.*, 906 F.2d 1399, 1416 (10th Cir. 1990)). However, none of the evidence that Plaintiff has described in his MOTION meets these criteria.

      1. Officer Aragon's Testimony Concerning the Stop and Detention

In the MOTION, Plaintiff asserts that in the criminal case against Plaintiff, Officer Aragon's sworn statements in magistrate court contradicted his sworn testimony in the appeal hearing in state district court. In magistrate court, Officer Aragon stated that when he turned on his emergency lights to begin the traffic stop, Plaintiff turned into an Auto Zone parking lot, which was flooded with standing water. Officer Aragon testified that he asked Plaintiff to move his vehicle to an adjacent parking lot located on the north side of the Bank. Officer Aragon testified in state district court that he pulled Plaintiff's vehicle over on the west side of the Bank's parking lot. Plaintiff asserts that after his conviction in magistrate court, he measured the slope of the Auto Zone's parking lot and noted that the grade on the parking lot would not allow

standing water. Plaintiff states that he recorded a DVD of his investigation concerning the Auto Zone parking lot. Plaintiff contends that this evidence sufficiently proves that Officer Aragon's account of the stop was untruthful or at least undermines his credibility. Plaintiff argues that the Court should set aside the dismissal to allow Plaintiff the opportunity to pursue his claims. However, Officer Aragon's testimony from the criminal proceedings existed well before the dismissal in this case and cannot be "newly discovered evidence" under Rule 60(b)(2).

In addition, Defendants correctly contend that even if Plaintiff's assertions about Officer Aragon's testimony are taken as true, they do not support Plaintiff's claim that the traffic stop was illegal. Officer Aragon testified that the reason for the stop was his observation that Plaintiff's vehicle was weaving in and out of its lane. In addition, Plaintiff's conviction for failing to maintain a traffic lane supports Officer Aragon's account. Thus, the alleged inconsistencies in Officer Aragon's testimony cannot be considered "newly discovered evidence" and do not support setting aside the Stipulation of Dismissal under Rule 60(b). [3]

---

[3] The Court notes that Plaintiff has inconsistently described the events surrounding his detention. Plaintiff states in his MOTION that on November 11, 2006 "Plaintiff drove down hwy 550 turned north on Don Tomas turned east into the First Community Bank and parked in the back of the bank, this being the north side of the bank. . . . The Plaintiff saw the Police Officer's vehicle at the entrance to the bank on Don Tomas. **As Plaintiff and Nathaniel Miles exited the vehicle**, the Officer approached their vehicle at high speed with his emergency lights on." (Mot. ¶ 2) (emphasis added).  However, Plaintiff alleged in the amended complaint that "the Plaintiff's vehicle was parked and locked in the parking area of the [Bank] . . . . After the Plaintiff finished his business [at the ATM], he and his companion, Nathaniel Miles **headed back to the parked vehicle** when they noticed a police car parked by the entrance of the bank. The Officer waited until the Plaintiff and his companion were in their vehicle and then sped up to the vehicle . . . and engaged his emergency lights." (Doc. No. 25-1, Am. Compl.¶ 9) (emphasis added). In Plaintiff's answers to interrogatories, Plaintiff describes the stop as follows: "The Policeman Mark Aragon approached my Parked car at a high rate of speed with **no lights on. I had exited my car and was headed toward** the 24 hr. teller machine. Officer Mark Aragon told us to stop and to put our hands on the hood. He then asked what we were doing at the Bank. . . ." (Resp. Ex. 2) (emphasis added).

### 2. Officer Aragon's Description of Plaintiff's Vehicle

Plaintiff further contends that Officer Aragon testified in state district court that Plaintiff was driving an Isuzu Trooper. But, Plaintiff was driving an Isuzu Rodeo, which has a different body shape. Again this evidence was available to Plaintiff prior to his voluntary dismissal and cannot support relief under Rule 60(b)(2).

### 3. Officer Aragon's Failure to Log Into Evidence the Dash Cam Recording

Plaintiff asserts that "[d]uring Deposition and in District Court Trial, Officer Aragon states that he put the video dash cam into evidence at the Bernalillo Police Department." (Mot. 3.) According to Plaintiff, the dash cam recording would have proven that Plaintiff was wrongfully detained and arrested. Plaintiff contends that, upon his release from jail, Plaintiff attempted to get a copy of the recording but "the receptionist informed the Plaintiff that the officer never signed the log book. The log book must be signed before you admit the video cam into evidence." (*Id.*) Plaintiff maintains that dash cam recording is now missing and would have proven his version of the events and that Officer Aragon unlawfully detained and arrested him. This information, however, was also available to Plaintiff prior to his voluntary dismissal and is not newly discovered evidence under Rule 60(b). [4]

---

[4] In the Court's MEMORANDUM OPINION AND ORDER (Doc. No. 94) entered on December 15, 2010, the Court discussed an affidavit submitted by Bernalillo Chief of Police, Fred Radosevich. (*Id.* at 5.) In the affidavit, Chief Radosevich testified that the video tape recording of Plaintiff's arrest captured on Officer Aragon's dash cam was recycled 90 days after Plaintiff's arrest according to BPD procedure. In the affidavit Chief Radosevich also stated that he did not receive notice of Plaintiff's claims against Officer Aragon, BPD and the City of Bernalillo until March 21, 2007, which was more than 90 days after the arrest on November 11, 2006. This is an alternative explanation as to why BPD did not have a copy of the dash cam recording logged into evidence.

4. Officer Aragon's Actions At His Deposition

In his MOTION, Plaintiff contends that during Officer Aragon's deposition, the officer "jumped up and started yelling at [Plaintiff's] Attorney, Anthony Ayala." (Mot. ¶ 11.) According to Plaintiff, Officer Aragon's display of temper proves that Officer Aragon had no probable cause to detain Plaintiff, that Officer Aragon used excessive force during the arrest, that Officer Aragon initiated threatening telephone calls after the Stipulation of Dismissal, and that Plaintiff has been unable to retain another attorney to represent him because of the telephone "death threats" allegedly initiated by Officer Aragon after the voluntary dismissal.[5] Plaintiff presents no admissible evidence to support his contention concerning the "death threats." In addition, Officer Aragon's actions at his deposition were known by Plaintiff and cannot be considered newly discovered evidence.

5. Photographs of Plaintiff's Injuries

In his Reply, Plaintiff asserts that the "booking photos of my left side which would have shown the blood in my ear and on my neck and shirt have been omitted or lost by the coerciveness of Officer Aragon. . . ." Plaintiff presents no admissible evidence of this contention. However, even if true, the fact that the booking photographs are allegedly unavailable predates Plaintiff's Stipulation of Dismissal and cannot be considered newly discovered evidence.

Since Plaintiff's MOTION is asserted *pro se*, the Court has liberally construed his contentions. *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991) (stating that courts should hold *pro se* litigant's pleadings to a less stringent standard than formal pleadings drafted

---

[5] The Court notes that in his Reply, Plaintiff contends that he "has received the OK to be represented by Attorney Robert Beck." With this statement, Plaintiff undermines his contention that no attorney will represent him out of fear of Officer Aragon.

by lawyers). Nevertheless, Plaintiff is not entitled to relief under Rule 60(b)(2). First and foremost, all of the above-described evidence is not "newly discovered" because the evidence or the circumstances surrounding any missing evidence was available prior to the Stipulation of Dismissal. Plaintiff presents no evidence to counter Officer Aragon's testimony that he observed Plaintiff's vehicle weaving out of its lane. And although Plaintiff's DWI conviction was overturned, Plaintiff's conviction for failing to maintain his traffic lane was upheld. This conviction supports the testimony of Officer Aragon that he pulled over Plaintiff's vehicle for weaving in and out of its traffic lane. Therefore, Officer Aragon had reasonable suspicion to initiate a traffic stop and to further detain Plaintiff to determine whether Plaintiff was impaired. More importantly, Plaintiff voluntarily dismissed this case after having raised all of these contentions either in his amended complaint or in discovery. Therefore, the Stipulation of Dismissal cannot be set aside based on newly discovered evidence.

### B. Plaintiff's Allegations of Coercion

Plaintiff asserts that his decision to dismiss his case at the settlement conference was coerced and should be set aside because it was not a "voluntary" dismissal. Plaintiff states that when he asked his attorney for advice, his attorney told him to listen to Magistrate Judge Torgerson. During the settlement conference, Judge Torgerson stated that he was inclined to dismiss the case and that if the case was dismissed, Plaintiff could be held responsible for Defendants' costs and attorney's fees. Plaintiff contends that he was pressured into dismissing his case at the settlement conference and put his "mark" on the settlement agreement at the settlement conference, as opposed to actually signing it.[6] Plaintiff alleges that he felt "he was

---

[6] Plaintiff presents no evidence that a settlement agreement was signed at the settlement conference, and no settlement agreement appears of record.

stuck between a rock and a hard place" after Magistrate Judge Torgerson's statement.

Defendants do not dispute that Judge Torgerson explained to Plaintiff that Judge Torgerson considered the stop to be lawful since Plaintiff was convicted of an illegal lane change. Nor do Defendants dispute Judge Torgerson's explanation that if the court dismissed the case, Plaintiff could be ordered to pay Defendants' costs including attorney's fees. Under 42 U.S.C. § 1988,[7] a defendant may recover costs including attorney's fees in a Section 1983 action if the lawsuit was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995) (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). However, Defendants dispute Plaintiff's contention that he was coerced into dismissing this case.

Presumably, Plaintiff's request to set aside the RULE 41 STIPULATION OF DISMISSAL WITH PREJUDICE (Doc. No. 95) on the coercion basis is brought under the catch-all provision of Rule 60(b)(6), which allows relief from a final order "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Compared with the other Rule 60(b) subsections, relief under this provision "is even more difficult to attain and is appropriate only 'when it offends justice to deny such relief.'" *Yapp v. Excel Corp.*, 186 F.3d 1222, 1232 (10th Cir. 1999) (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996)).

Plaintiff's contention that he was pressured into dismissing his case based on Magistrate Judge Torgerson's remarks does not support setting aside the voluntary dismissal. First, although

---

[7] (b) Attorney's fees
In any action or proceeding to enforce a provision of sections . . . 1983 of this title, . . . the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs[.]
42 U.S.C. § 1988(b).

Plaintiff asserts that at the settlement conference his attorney was allowed to withdraw, no order of withdrawal appears of record, and Plaintiff's attorney signed the RULE 41 STIPULATION OF DISMISSAL WITH PREJUDICE (Doc. No. 95). Second, a judge cannot be considered as having coerced a party by expressing a view about the law or by suggesting to a party one course of action is likely to be more promising than another. *See Warfield v. Allied Signal TBS Holdings, Inc.*, 267 F.3d 538, 543 (6th Cir. 2001) (rejecting plaintiff's argument that the court influenced his decision to voluntarily dismiss his case at a settlement conference). In order to set aside a voluntary dismissal with prejudice under Rule 60(b)(6), the Court must find that the dismissal was not a "free, calculated, and deliberate" choice. *Warfield*, 267 F.3d at 542 (quoting *Randall v. Merrill Lunch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987)). In other words, Plaintiff must show that conditions at the settlement conference, ". . . negated [Plaintiff's] ability to make a free choice in the matter." *Id.* (citation omitted). However, Plaintiff has presented no evidence that his dismissal was involuntary. His claim that he was coerced during the settlement conference is belied by the fact that Plaintiff was represented by counsel and that Magistrate Judge Torgerson, like the judge in *Warfield*, merely expressed "a view about the law" and suggested that "one course of action is likely to be more promising than another." *Id.* at 543. Magistrate Judge Torgerson's suggestion that he was inclined to dismiss this case also does not support a finding that the dismissal was involuntary. *Id.* (stating that district court did not coerce voluntary dismissal when court suggested that a defendant would prevail on a motion to dismiss). Significantly, the settlement conference was held on December 9, 2010, but the Stipulation of Dismissal was entered on the docket on December 16, 2010 indicating that Plaintiff had several days to change his mind about the dismissal after consulting his attorney.

    In sum, Plaintiff has failed to persuade the Court that his voluntary dismissal with

prejudice should be set aside either on the basis of newly discovered evidence or because his decision to dismiss the case was coerced.

    IT IS ORDERED that PLAINTIFF'S MOTION FOR RECONSIDERATION (Doc. No. 96) is denied.

                                         */s/ James A. Parker*
                               SENIOR UNITED STATES DISTRICT JUDGE